UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:23-CV-00184-GNS-HBB

NIRANGTAR LLC
d/b/a RED ROOF INN CAVE CITY                                             PLAINTIFF

v.

NAVIGATORS SPECIALTY INSURANCE COMPANY                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Exclude Kurttila (DN 43) and Defendant's Motion to Exclude Ramsey (DN 44). The motions are ripe for adjudication.

### I.     BACKGROUND

Plaintiff Nirangtar LLC (d/b/a Red Roof Inn Cave City) ("Red Roof") alleges that a storm caused damage to its property. (Compl. ¶ 5, DN 1-1). At the time of the loss, Red Roof had an insurance policy with Defendant Navigators Specialty Insurance Company ("Navigators"). (Compl. ¶ 7). Because Navigators has not paid Red Roof for its claimed losses, Red Roof filed suit in Barren Circuit Court (Kentucky), which Navigators removed to federal court. (Compl. ¶ 15; Notice Removal, DN 1).

Red Roof has recently disclosed expert witnesses, including Deanna Ramsey ("Ramsey") and Dennis James Kurttila ("Kurttila"). (Service Pl.'s Expert Witness Disclosure 1, DN 32). Ramsey, a certified public accountant, has been disclosed to express opinions regarding Red Roof's lost revenue; Navigators contends that Red Roof provided her with the necessary information, then she "simply multiplied (the number of rooms) times (the number of nights they were allegedly unavailable) times (the average rental rate)." (Def.'s Mot. Exclude Ramsey 2, DN

44; Def.'s Mot. Exclude Ramsey Ex. 1, at 1, DN 44-1). Kurttila, a public insurance adjuster, has been offered to provide his cost estimate for Red Roof's repairs and losses resulting from the storm. (Def.'s Mot. Exclude Kurttila Ex. 1, at 5-6, DN 43-1 [hereinafter Kurttila Rep.]). Navigators now moves to exclude the testimony of these two experts. (Def.'s Mot. Exclude Kurttila, DN 43; Def.'s Mot. Exclude Ramsey, DN 44).

## II. JURISDICTION

The Court has subject-matter jurisdiction over this action through diversity jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00. *See* 28 U.S.C. § 1332; 28 U.S.C. § 1441(b).

## III. STANDARD OF REVIEW

"Admissibility in federal court, including the admissibility of expert testimony, is determined by federal standards even when a case such as this one is tried in diversity." *Guthrie v. Ball*, No. 1:11-CV-333-SKL, 2014 WL 11581410, at *3 (E.D. Tenn. Oct. 10, 2014) (citing *Legg v. Chopra*, 286 F.3d 286, 290 (6th Cir. 2002)). Fed. R. Evid. 702 governs expert witness testimony and provides that an expert's opinion is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The trial court must act as a gatekeeper to ensure that expert testimony is both relevant and reliable, as required by Fed. R. Evid. 104 and 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Conwood Co. v. U.S. Tobacco Co., L.P.*, 290 F.3d 768, 792 (6th. Cir. 2002) (citation omitted). "It is the proponent of the testimony that must establish its admissibility by a preponderance of proof[,]" but "[a]ny doubts regarding the admissibility . . .

should be resolved in favor of admissibility." *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10); *In re: E. I. Du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 337 F. Supp. 3d 728, (S.D. Ohio 2015) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendments). "[R]ejection of expert testimony is the exception, rather than the rule[,]" as "[t]he Court's gatekeeping role does not supplant the traditional adversarial system and the jury's role in weighing evidence." Fed. R. Evid. 702 advisory committee's note to 2000 amendments; *Certain Underwriters at Lloyd's v. Morrow*, No. 1:16-CV-00180-GNS-HBB, 2019 WL 3558177, at *8 (W.D. Ky. Aug. 5, 2019) (citing *Rogers v. Detroit Edison Co.*, 328 F. Supp. 2d 687, 691 (E.D. Mich. 2004)); *Stotts v. Heckler & Koch, Inc.*, 299 F. Supp. 2d 814, 819 (W.D. Tenn. 2004)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

The Court's role is to examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (citation omitted). "Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592 (internal citation omitted) (citations omitted). "Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Id.* (internal quotation marks omitted) (internal citation omitted). Still, the "liberal interpretation of this requirement 'does not mean that a witness is an expert simply because he claims to be.'" *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (citation omitted).

Expert testimony must be based on scientific, technical, or other specialized knowledge. *Daubert* 509 U.S. at 589-90; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 152 (1999). "Knowledge" is more than mere "subjective belief or unsupported speculation[,]" but the subject of scientific testimony need not be "'known' to a certainty; arguably, there are no certainties in science." *Daubert*, 509 U.S. at 590; *see Wellman v. Norfolk & W. Ry. Co.*, 98 F. Supp. 2d 919, 923 (S.D. Ohio 2000) ("[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable." (citation omitted)).

### IV. DISCUSSION

Navigators moves to exclude the expert testimony of Ramsey and Kurttila. (Def.'s Mot. Exclude Ramsey; Def.'s Mot. Exclude Kurttila). Red Roof does not object to the exclusion of Ramsey's testimony. (Pl.'s Resp. Mot. Exclude Ramsey 2, DN 56). Certainly, a jury would be capable of performing simple multiplication without the aid of an expert, so that motion is granted. (Def.'s Mot. Exclude Ramsey 2, Pl.'s Resp. Mot. Exclude Ramsey 2).

Red Roof does, however, contest the exclusion of Kurttila's testimony. (Pl.'s Resp. Mot. Exclude Kurttila 5, DN 50). Navigators argues that Kurttila's testimony should be excluded because it is unreliable and unhelpful, but does not question Kurttila's qualifications. (Def.'s Mot. Exclude Kurttila 1).

#### A. Reliability

When determining the reliability of an expert's testimony, the key is "whether the reasoning or methodology underlying the testimony is scientifically valid . . . ." *Daubert*, 509 U.S. at 592-93. The Supreme Court has advised, however, that the inquiry is flexible and that "[t]he focus . . . must be solely on principles and methodology, not on the conclusions that they generate."

*Id.* at 595. Though there is no definitive checklist for determining whether an expert's testimony is reliable, *Daubert* outlines a non-exhaustive list of factors for courts to consider: (1) whether the theory or method in question "can be (and has been) tested"; (2) whether it "has been subjected to peer review and publication"; (3) whether it has a "known or potential rate of error"; and (4) whether the theory or technique enjoys "general acceptance" in the "relevant scientific community . . . ." *Id.* at 593-94 (citation omitted).

The Sixth Circuit has identified several "[r]ed flags that caution against certifying an expert [such as] reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citation omitted). Ultimately, it is the burden of the party proffering the expert witness to establish that its experts' theories are "reliable and adequately supported by sound technical data, methodology and testing." *Berry v. Crown Equip. Corp.*, 108 F. Supp. 2d 743, 754 (E.D. Mich. 2000) (citation omitted). "[T]he trial judge . . . ha[s] considerable leeway in deciding . . . whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152; *Conwood Co.*, 290 F.3d at 792; *see Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671-72 (6th Cir. 2010) ("Rule 702, we recognize, does not require anything approaching absolute certainty. And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." (internal citation omitted) (citation omitted)).

Here, Navigators argues that Kurttila's proffered testimony is unreliable. (Def.'s Mot. Exclude Kurttila 1). Navigators asserts that Kurttila is biased and contests reliability of his methods and the factual basis of Kurttila's report. (Def.'s Mot. Exclude Kurttila 1, 9, 11).

1.  *Bias*

Generally, "[t]he court will not exclude the witnesses based on their potential bias, which can be fairly assessed by a jury." *Grae v. Corr. Corp. of Am.*, No. 3:16-CV-2267, 2021 WL 1100431, at *5 (M.D. Tenn. Mar. 17, 2021); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-CV-01509, 2020 WL 7767625, at *11 (S.D. Ohio Dec. 30, 2020) ("Determining the credibility of a witness, which includes '[a]ssessing the potential bias of the expert witness,' is ultimately an issue for the jury." (quoting *Cruz-Vazquez v. Mennonite Gen. Hosp., Inc.*, 613 F.3d 54, 59 (1st Cir. 2010))). It is not uncommon for employees of parties—and sometimes the parties themselves—to testify as experts. *Conde v. Velsicol Chem. Corp.*, 804 F. Supp. 972, 985 (S.D. Ohio 1992). "[A]bsent a showing of bias so extreme that exclusion is appropriate under *Daubert*, the Court believes that disclosure of possible financial bias coupled with cross-examination by the parties is a more appropriate and fine-tuned mechanism for arriving at the truth." *In re Welding Fume Prods. Liab. Litig.*, 534 F. Supp. 2d 761, 766 (N.D. Ohio 2008) (citing Leslie Boden & David Ozonoff, *Litigation-Generated Science: Why Should We Care?*, 116 Env't Health Persps. 117, 119 (Jan. 2008)). Thus, though Kurttila may have just "switched hats" from public adjuster to expert witness, that is not sufficient reason to exclude his testimony. (Def.'s Mot. Exclude Kurttila 1). Navigators may instead attack his credibility on cross-examination.

2.  *Methods*

Where a party challenges the testimony of a proffered expert for insufficient factual basis, data, principles, methods, or their application, "the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co.*, 526 U.S. at 149 (alteration in original) (quoting *Daubert*, 509 U.S. at 592). "The

task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008) (citing Fed. R. Evid. 702; *Conwood Co.*, 290 F.3d at 792).

### a.   Overhead and Profit

Navigators asserts that Kurttila's testimony relating to his overhead and profit ("O&P") calculations is unreliable because Kurttila did not know whether Red Roof had retained a contractor nor whether Red Roof could be paid for O&P under Kentucky law. (Def.'s Mot. Exclude Kurttila 10-11). He did testify that, in his opinion, Red Roof should be paid for O&P, that this is standard practice in the insurance business, that this is the case in Tennessee, and two Kentucky hotels damaged in the same storm received settlements that included O&P. (Kurttila Dep. 29:18-30:15, 149:24-150:12, May 30, 2025, DN 43-2). Thus, Kurttila had a reasonable basis in his knowledge and experience to include O&P in his estimate.

### b.   Professional Standards

Navigators notes that Kurttila was unable to articulate the professional standards he used in preparing the estimate. (Def.'s Mot. Exclude 10). Red Roof does not contradict this assertion. (Pl.'s Resp. Mot. Exclude). Though unable to name any specific professional standards, Kurttila testified that he used his "years of contracting and public accounting and working with Xactimate" to come to his conclusions. (Kurttila Dep. 127:5-11). Courts have held that Xactimate, a program used by insurance companies and public adjusters to develop estimates, is a reliable method for creating estimates. *Kush Enters., LLC v. Mass. Bay Ins. Co.*, No. 3:18-CV-492, 2021 WL 3007263, at *8 n.4 (E.D. Tenn. July 15, 2021). Kurttila's inability to name any "professional

standards" used does not make his estimate unreliable per se—Red Roof has demonstrated that Kurttila's estimate has a basis in his knowledge of and experience with these sorts of estimates.

### c. Date

Navigators highlights the fact that Kurttila does not know why he used the month reflected in the estimate. (Def.'s Mot. Exclude 10). Red Roof does not contradict this assertion. Here is Kurttila's testimony on the subject:

> A. . . . . So it's a Xactimate price list for that ZIP code for that particular date.
> Q. All right. So you said November 23rd.
> A. November of '23.
> Q. November of '23. Why did you use that month when you prepared this in October of '24?
> A. Honestly, I'm not sure why I did. The prices were probably higher in 10/28 of '24. It may have been the prices that I had plugged in there when I had done the estimates for the other two hotels over on that side of the world or for this—for looking at this hotel.

(Kurttila Dep. 128:11-23). Kurttila's use of November of 2023 in his estimate does not make his testimony so unreliable that it should be excluded. November 2023 is after the storm loss occurred, and, on a practical note, the use of November 2023 rather than October 2024 is likely favorable for Navigators, as Kurttila believes prices would have only increased, resulting in a higher estimate. (Compl. 6; Kurttila Dep. 128:18-23). Thus, Kurttila's testimony will not be excluded on this basis.

### 3. *Factual Basis*

An expert may rely on "data [presented] to the expert outside of court and other than by his own perception." Fed. R. Evid. 703. "[I]t is not uncommon for an expert to rely on data presented by the party who hired him as a basis for his expert analysis." *Popovich v. Sony Music Entm't, Inc.*, No. 1:02 CV 359, 2005 WL 5990223, at *3 (N.D. Ohio May 9, 2005). Additionally, "[a]n expert need not have complete knowledge of the field in question as long as the knowledge

possessed will assist the trier of fact. Thus, even when an expert witness is not certain . . . , expert testimony is not automatically rendered inadmissible." *Bible v. Wal-Mart Stores*, 977 F.2d 580, 1992 WL 289582, at *2 (6th Cir. 1992) (internal citation omitted). "[N]othing . . . requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support." Fed. R. Evid. 702 advisory committee's note to 2023 amendments; *see In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 767 F. Supp. 3d 495, 504 (E.D. Mich. 2025).

Moreover, "a 'court is not required to admit expert testimony that is connected to existing data only by [an assertion without proof] of the expert' and 'may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Builders Mut. Ins. Co. v. GCC Constr., LLC*, 711 F. Supp. 3d 899, 917 (E.D. Tenn. 2024) (quoting *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d at 254). Courts will, however, "generally permit testimony based on allegedly erroneous facts when there is some support for those facts in the record." *Scrap Metal*, 527 F.3d at 530. Mere weaknesses in the factual bases of an expert's opinions go to weight, not admissibility. *Id.*

Thus, an expert's testimony may still admissible even though the expert "noted several potential errors in his own estimate." *Lewis v. S. Tr. Ins. Co.*, No. 1:22-CV-01079-JDB-JAY, 2023 WL 4671214, at *4 (W.D. Tenn. July 20, 2023); *see also Samuels v. Allstate Prop. & Cas. Ins. Co.*, 310 F. Supp. 3d 847, 880 (E.D. Mich. 2018) (admitting expert testimony even though "he may not have done his most thorough job of calculating damages in this case"). Indeed, in an insurance dispute similar to this case, a sister court permitted the testimony of an expert who:

> testified that he assumed that there was "a skim coat" despite the house being "taken down all the way to the studs", "soot damage" in the garage, "soot damage" in the shelter room, a "fiberglass shower" in the master bedroom, "standard unit" cabinets in the kitchen rather than "premium or custom-grade cabinetry" and that the kitchen

> flooring was bamboo rather than pre-finished solid wood. Furthermore, he testified that he failed to take "depreciation" out of the dwelling's vinyl siding, mistakenly included a "fiberglass shower unit in [a] half bath", the selection of bamboo flooring instead of carpet in the living room was "an error", and that he was unsure whether the stairs and landing were carpeted or made of hardwood. Finally, he stated that he did not speak with anyone at First Call Claims before finalizing his estimate.

*Lewis*, 2023 WL 4671214, at *3. The court concluded that although the expert's "proffered testimony may very well be shaky, because the opinions were based upon facts in the record, and were not assumptions or guesses, Defendant's arguments go to the accuracy of the conclusions, not to the reliability of the testimony." *Lewis*, 2023 WL 4671214, at *4 (internal quotation marks omitted) (quoting *Scrap Metal*, 527 F.3d at 530)).

Here, Navigators argues that Kurttila's testimony should be excluded because he relied on questionable facts and figures provided by Red Roof. (Def.'s Mot. Exclude Kurttila 9). In many cases, Kurttila does not know how Red Roof acquired or calculated that underlying data. (Def.'s Mot. Exclude Kurttila 11-18). Additionally, Navigators avers that the claimed damages exceed the scope of Red Roof's causation expert's testimony. (Def.'s Mot. Exclude Kurttila 16). Ultimately, Navigators challenges the factual basis for almost every single line item in Kurttila's estimate. (Def.'s Mot. Exclude Kurttila 11-18).

Kurttila has remedied some of the inaccuracies by removing Line Items 4 and 5 from the estimate, as these damages were inconsistent with Prosser's testimony. (Pl.'s Resp. Mot. Exclude Kurttila Ex. 7, at 1, DN 50-7). Some issues remain. Line Item 16, for instance, appears to include repair work done before the storm. (Def.'s Mot. Exclude Kurttila 17; Kurttila Rep. 9; Def.'s Mot. Exclude Kurtilla Ex. 3, DN 43-3). Even where Kurtilla's estimate may be inaccurate, however, it was based on information supplied to him by Red Roof or from his own observation. Kurttila may rely on Red Roof's data in his estimate without independently verifying it, under the assumption

10

that it was caused by the storm.[1]  *See* Fed. R. Evid. 703.  Navigators may challenge that data and any assumptions at trial; any weakness in the factual support for Kurttila's estimate goes to weight, not admissibility.

B. **Helpfulness**

Expert testimony is unhelpful when it is "unreliable or irrelevant . . . and also when it merely deals with a proposition that is not beyond the ken of common knowledge . . . ." *Redmond v. United States*, 194 F. Supp. 3d 606, 615 (E.D. Mich. 2016) (internal citation omitted).  Here, Navigators argues that Kurttila only performed multiplication and addition to construct his estimate.  (Def.'s Mot. Exclude Kurttila 1).

Some courts have held that, because jurors can perform basic math, expert testimony that can be reduced to a simple calculation violates the principle that an expert's testimony must involve "specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue" and is therefore inadmissible.  Fed. R. Evid. 702(a); *see, e.g.*, *Advanced Drainage Sys., Inc. v. Quality Culvert, Inc.*, No. 2:12-CV-1121, 2015 WL 1299368, at *8 (S.D. Ohio Mar. 23, 2015) (collecting cases). Other courts have rejected this argument, holding that "[a]lthough the jury may be able to calculate any damages . . . without any assistance, [expert] testimony will *help* the jury with this determination and is therefore admissible." *Crouch v. John Jewell Aircraft, Inc.*, No. 3:07-CV-638-DJH, 2016 WL 157464, at *13 (W.D. Ky. Jan. 12, 2016).

Regardless, Kurtilla does more than just "basic math."  He generated estimates for several line items using Xactimate, relying on his own professional experience and, in one case, own measurements.  (Kurtilla Dep. 55:23-56:23, 78:10-79:8, 143:14-144:23).  Courts "have treated public claims adjusters and their use of Xactimate as within the realm of expert testimony." *Zitzow*

---

[1] Kurttila does not offer his own opinions on causation.  (Kurttila Dep. 11:23-12:2).

11

*v. Auto-Owners Ins. Co.*, No. 22-5549, 2023 WL 2033792, at *8 (6th Cir. Feb. 16, 2023); *see also Kush Enters., LLC*, 2021 WL 3007263, at *8; *Coshap, LLC v. Ark Corp. Member Ltd.*, No. 1:16-CV-0904-SCJ, 2017 WL 9287017, at *5 (N.D. Ga. Dec. 12, 2017). Thus, Kurtilla's preferred testimony will not be excluded on the basis that it is unhelpful.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Exclude Kurttila (DN 43) is **DENIED** and Defendant's Motion to Exclude Ramsey (DN 44) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

November 10, 2025

cc:   counsel of record